IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

—————————————————————————

ANTHONY GILL,

                         Plaintiff,

                                                    Civil Action No.
          vs.                                       9:00-CV-1553 (GTS/DEP)

F. CALESCIBETTA, *et al.*,

                         Defendants.

—————————————————————————

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

ANTHONY GILL, *pro se*
3317 Decatur Avenue
Apartment 3
Bronx, New York 10467

FOR DEFENDANTS:

HON. ANDREW CUOMO              MICHAEL G. McCARTIN, ESQ.
Office of the Attorney General  Assistant Attorney General
State of New York
The Capitol
Albany, New York 12224

## REPORT AND RECOMMENDATION

         Plaintiff Anthony Gill, a former New York State prison inmate who is

not unfamiliar to the federal court system, having instituted a host of suits

in this and other districts while incarcerated, has commenced this

proceeding pursuant to 42 U.S.C. § 1983 alleging deprivation of his civil rights.  Although his complaint originally contained a significantly broader array of assertions, plaintiff's claims have since been winnowed down to four separate instances of alleged retaliation on the part of various of the defendants, in violation of his rights under the First Amendment.

Following the entry of summary judgment dismissing all of plaintiff's claims and a subsequent partial reversal of the resulting judgment by the United States Court of Appeals for the Second Circuit, the action is now back before this court for consideration of plaintiff's remaining retaliation claims.  Procedurally, the matter is being considered by the court as a renewal of defendants' earlier-filed summary judgment motion.  Both parties have submitted supplemental briefing in connection with the four remaining claims, and specifically addressing whether one or more of them can be disposed of on summary judgment as a matter of law.

Having carefully considered the parties' submissions, in light of the standard under which retaliation claims are reviewed, I recommend a finding that while one of plaintiff's retaliation claims is susceptible of resolution on motion for summary judgment, triable issues of material fact exist with respect to the remaining three, and accordingly that the action proceed to trial in connection with those claims.

2

I.    <u>BACKGROUND</u>[1,2]

Plaintiff is a former prison inmate previously entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS"); at the times relevant to his claims plaintiff was designated to the Auburn Correctional Facility ("Auburn"), located in Auburn, New York. *See generally* Complaint (Dkt. No. 1).  On July 17, 2000 Gill, who is a non-smoker claiming to suffer from chronic asthma and sinus ailments, began working in the prison mess hall where, apparently consistent with the DOCS policy regarding the use of tobacco products, "no smoking" signs are posted in various locations.  Complaint (Dkt. No. 1) ¶¶ 3-5.  Plaintiff maintains that despite those notices and the underlying policy prohibiting such conduct,  various defendants repeatedly smoked cigarettes in the mess hall area during their shifts, and additionally allowed inmates to smoke in the kitchen recreation areas, forcing Gill to be exposed to secondhand smoke, or environmental tobacco smoke ("ETS").  *Id.* at ¶¶ 8-

---

[1]    Because only plaintiff's retaliation causes of action remain in the case, I will recount only the facts giving rise to those claims.

[2]    In light of the procedural posture of the case the following recitation is drawn from the record now before the court, with all inferences drawn, and ambiguities resolved, in favor of the plaintiff.  *See Wells-Williams v. Kingsboro Psychiatric Ctr.*, No. 03-CV-134, 2007 WL 1011545, at *2 (E.D.N.Y. Mar. 30, 2007) (citations omitted).  It should be noted, however, that many if not most of plaintiff's allegations are sharply contested by the defendants.

12.

On August 7 and 8, 2000, while in the mess hall kitchen recreation area, plaintiff experienced two severe asthma attacks, requiring hospitalization and resulting in his being placed on "excuse from work" ("EFW") status by medical personnel at the facility.  Complaint (Dkt. No. 1) at ¶ 13.  Gill also contends he suffered from headaches during and after working in the mess hall area. *Id.* at ¶ 16.

Plaintiff filed a grievance on or about August 11, 2000, complaining of defendants' lax enforcement of the DOCS "no-smoking" policy in Auburn's mess hall and his resulting exposure to ETS.  Complaint (Dkt. No. 1) at ¶14 and Exh. C.  Plaintiff maintains that in retaliation for the filing of that grievance, defendant Calescibetta lodged a false misbehavior report against him, resulting in Gill's placement in keeplock confinement for a period of sixteen days.[3]  *Id.* at ¶¶ 15, 19, 23, 25-26, 51 and Exh. C.

_____

[3]        Keeplock is a form of confinement restricting an inmate to his or her cell, separating the inmate from others, and depriving him or her of participation in normal prison activities.  *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989); *Warburton v. Goord*, 14 F. Supp.2d 289, 293 (W.D.N.Y. 1998) (citing *Gittens*); *Tinsley v. Greene,* No. 95-CV-1765, 1997 WL 160124, at *2 n. 2 (N.D.N.Y. Mar. 31, 1997) (Pooler, D.J. & Homer, M.J.) (citing, *inter alia, Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir. 1995)).  Inmate conditions while keeplocked are substantially the same as in the general population.  *Lee v. Coughlin*, 26 F. Supp. 2d 615, 628 (S.D.N.Y. 1998).  While on keeplock confinement an inmate is confined to his or her general population cell for twenty-three hours a day, with one hour for exercise.  *Id.*  Keeplocked inmates can leave their cells for showers, visits, medical exams and counseling, and can have cell study, books and periodicals.  *Id.*  The primary difference between keeplock and the

Upon his release from restricted confinement on August 30, 2000, plaintiff returned to his position at the mess hall, where he worked until on or about September 17, 2000. *Id.* at ¶¶ 27, 44-45.

Following his release from keeplock confinement Gill was pressed by prison officials, including defendants Letourneau, Harrington and French, to withdraw his grievance regarding ETS exposure. *See, e.g.* Complaint (Dkt. No. 1) ¶¶ 33, 35-37. Plaintiff asserts that as a result of his refusal to accede to that request defendants Letourneau and Harrington caused him again to be placed in keeplock confinement, this time for an additional fifteen days. *Id.* at ¶¶ 33, 35-38, 40, 63.

Plaintiff's complaint alleges two additional instances of alleged retaliation. According to Gill, he was discharged from his prison mess hall position by defendant Letourneau in September of 2000 in retaliation for his having filed grievances, and was informed that he was no longer permitted into the mess hall area in light of his asthma. Complaint (Dkt. No. 1) ¶¶ 46, 71; *see also* Plaintiff's Rule 7.1(a)(3) Statement (Dkt. No. 60) ¶ 26. Plaintiff also asserts that on September 25, 2000, again in retaliation for having filed grievances, defendants Pidlypchak and

_____

general population confinement conditions is that keeplocked inmates do not leave their cells for out-of-cell programs, and are usually allowed less time out of their cells on the weekends. *Id.*

Calescibetta obtained a copy of one of his grievances and posted it in the mess hall area for review by those in general inmate population.  *Id.* at ¶¶ 48, 77.

## II.   PROCEDURAL HISTORY

Despite its age and somewhat tortured history, the salient portions of the suit's procedural history can be succinctly summarized.  Plaintiff commenced the action on October 11, 2000, Dkt. No. 1.  As defendants, plaintiff's complaint names Corrections Officers Calescibetta, Pidlypchak, Mattes, Harvey, French and Harrington; Corrections Sergeants M. Murray and Letourneau; Lieutenant Ashby; Edward A. Dann, Deputy Superintendent of Security; Captain G. Gummerson; Auburn Superintendent Hans Walker, and Inmate Grievance Program Supervisor Cheryl Parmiter.  *Id.*  Plaintiff's complaint asserts a variety of claims arising under the First, Eighth and Fourteenth Amendments, as well as the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*

On October 11, 2002 defendants moved for the entry of summary judgment in their favor on each of plaintiff's claims.  Dkt. No. 45.  That motion, which was vigorously opposed by the plaintiff, resulted in the issuance of a decision and order on September 10, 2003 by District Judge Joseph M. Hood, sitting by designation, granting the motion and

dismissing plaintiff's complaint in its entirety, with prejudice.  Dkt. No. 68.

Addressing plaintiff's claims of retaliation, which are the focus of this

report, Judge Hood found that plaintiff did not establish that defendants'

actions, allegedly prompted by retaliatory animus, had the desired effect

of deterring Gill from exercising his protected First Amendment rights,

particularly in light of his prodigious history of litigation and filing of

countless inmate grievances.  Decision and Order (Dkt. No. 68) at pp. 11-

13.  Believing such actual chilling to be a prerequisite to a finding of

unlawful retaliation, Judge Hood ordered dismissal of the retaliation claims

as a matter of law.  *Id.*  Judgment was subsequently entered on

September 10, 2003, dismissing plaintiff's retaliation claims as well as the

balance of his complaint based upon Judge Hood's decision.  Dkt. No. 69.

Plaintiff appealed the judgment of dismissal to the United States

Court of Appeals for the Second Circuit.  Dkt. No. 73.  In a summary order

issued on December 7, 2005, that court affirmed the district court's

determination except as to plaintiff's First Amendment retaliation claims.

*Gill v. Calescibetta*, 157 Fed. Appx. 395 (2d Cir. 2005) (unpublished

disposition); *see also* Dkt. No. 78 (mandate).  Addressing plaintiff's

retaliation claims, the Second Circuit noted that "in the narrow context of

prisoner retaliation suits, a prisoner need not demonstrate 'actual chill[,]'"

7

citing its opinion in *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004),

which post-dated Judge Hood's decision.  *Gill*, 157 Fed. Appx. at 397.

The Second Circuit remanded the matter to this court for evaluation of

whether defendants subjected Gill to a sufficiently adverse action to

constitute retaliation, describing the necessary inquiry as limited to

determining whether "there exists a genuine issue of material fact as to

whether defendants engaged in retaliatory conduct that would 'deter a

similarly situated individual of ordinary firmness from exercising his [or

her] constitutional rights.'" *Id.* (citing *Gill*, 389 F.3d at 381).

   This lingering issue, which was the subject of supplemental briefing

by the parties, *see* Dkt. Nos. 94-95, and involves only defendants

Calescibetta, Letourneau, French, Harrington and Pidlypchak, is now ripe

for determination and has been referred to me for the issuance of a report

and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(c).[4]  *See* Fed. R. Civ. P. 72(b); *see*

*also* Dkt. No. 93.

---

   [4]   I previously recommended that this matter be dismissed, based on
plaintiff's repeated failure to notify the court of changes in his current address,
pursuant to Local Rule 41.2(b).  Dkt. No. 97.  Since the issuance of that
recommendation, however, plaintiff has resumed compliance with this court's local
rules and has supplied the court with his address changes on several occasions.  *See*
Dkt. Nos. 99, 101.  Accordingly, my prior recommendation was withdrawn, and this
matter was returned to me for further review regarding plaintiff's retaliation claims.
*See* Text Order dated February 20, 2008.

III.    DISCUSSION

    A.    Failure To Provide Discovery

In his supplemental briefing Gill complains of defendants' failure to answer interrogatories propounded by him on March 13, 2006, shortly after the remand of this matter by the Second Circuit.  *See* Plaintiff's Supplemental Brief (Dkt. No. 94) at pp. 6-7.  In deference to his *pro se* status, I have construed this portion of plaintiff's brief as interposing an objection to the granting of summary judgment based upon the defendants' failure to provide discovery, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure.

Rule 56(f) states that

> [s]hould it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.

Fed. R. Civ. P. 56(f).  As can be seen, Rule 56(f) provides a narrow exception to the availability of summary judgment in instances where a party simply cannot fairly respond to a summary judgment motion because

9

of the inability, through no fault of the opposing party, to acquire evidence which is available and would preclude the entry of summary judgment. *See Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.,* 769 F.2d 919, 925-27 (2d Cir. 1985); *Crystalline H$_2$O, Inc. v. Orminski*, 105 F.Supp.2d 3, 6-9 (N.D.N.Y. 2000) (McAvoy, J.).  In order to successfully assert a Rule 56(f) defense to a summary judgment motion a litigant must provide specific indication of the evidence sought, its relevance to the issues underlying the motion, the efforts that were made to attain that evidence, and why those efforts have been unsuccessful.  *Hudson River Sloop Clearwater, Inc. v. Department of Navy,* 891 F.2d 414, 422 (2d Cir. 1989) (citing *Burlington*, 769 F.2d at 926-27); *Young v. Corbin*, 889 F.Supp. 582, 584-85 (N.D.N.Y. 1995) (McAvoy, C.J.).

In this case, as defendants appropriately note, discovery closed February 22, 2002 under the court's case management order issued pursuant to Rule 16 of the Federal Rules of Civil Procedure.  Dkt. No. 30; *see also* Northern District of New York Local Rule 16.2.  I note, moreover, that plaintiff's interrogatories were improperly served at a point in time when the case was stayed by order of District Judge Lawrence E. Kahn, issued on March 6, 2006, Dkt. No. 82, and were appropriately disregarded

by the defendants for both of these reasons.[5]  *Zhao v. City of New York*,
No. 07 Civ. 3636 (LAK) (MHD), 2008 WL 2940598, at *1 (S.D.N.Y. July
24, 2008) (untimeliness of discovery request in violation of case
management order sufficient basis for denial).

This action has been pending for more than eight years, and
discovery has been closed for seven.  Rather than adding an element to
the retaliation standard, in which case Gill legitimately could claim a need
for further discovery, the Second Circuit's decision eliminated what was
thought by the district court to be a required showing, but did not
otherwise alter the standard to be applied.  Under these circumstances, I
recommend that plaintiff's request for additional discovery be denied, and
that the court determine that defendants' failure to answer Gill's
interrogatories presents no impediment to the issuance of a decision on
the balance of the pending summary judgment motion.

B.    Summary Judgment Motion Standard

Summary judgment motions are governed by Rule 56 of the Federal

_____

[5]      The service of plaintiff's interrogatories was followed with a request by
him to the court, dated March 13, 2006, for permission to serve additional
interrogatories exceeding the twenty-five question limit imposed under Rule 33 of the
Federal Rules of Civil Procedure.  Dkt. No. 83.  That request was denied by text order
issued on March 23, 2006 with the added notation "[t]his action was STAYED in its
entirety by Order of Judge Kahn filed on 3/9/06."  *See* 3/23/06 Text Order.

Rules of Civil Procedure.  Under that provision, the entry of summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

A moving party seeking the entry of summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391

F.3d at 83.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  The entry of summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party.  *See Building Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be

13

but one reasonable conclusion as to the verdict").

     C.    <u>Retaliation</u>

Though often challenging in its application, the standard under which retaliation claims such as those raised by Gill are gauged is by now well-established, and easily articulated.  When adverse action is taken by prison officials against an inmate, motivated by the inmate's exercise of a right protected under the Constitution, including the free speech provisions of the First Amendment, a cognizable retaliation claim under 42 U.S.C. § 1983 lies.  *See Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988).  As the Second Circuit has repeatedly cautioned, however, such claims are easily incanted and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus; courts must therefore approach such claims "with skepticism and particular care."  *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (same).

When analyzing retaliation claims, courts resort to the burden shifting algorithm established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817 (1973) and its

progeny including, *inter alia*, *St. Mary's Honor Center v. Hicks,* 509 U.S.

502, 113 S. Ct. 2742 (1993).  *See Holtz v. Rockefeller & Co., Inc.,* 258 F.

3d 62, 76-77 (2d Cir. 2001); *Graham v. Long Island R.R.,* 230 F.3d 34, 38

(2d Cir. 2000); *Heinemann v. Howe and Rusling,* 529 F. Supp.2d 396, 405

(W.D.N.Y. 2008).  Under that model, the plaintiff bears the initial burden of

demonstrating a *prima facie* case of discrimination utilizing the standard

set forth above.  *Holtz*, 258 F. 3d at 76-77.   Upon the establishment of

such a *prima facie* case, the burden of going forward shifts to the

defendant to articulate a legitimate non-discriminatory reason for taking

the action under consideration.  *Brock v. Casey Truck Sales, Inc.,* 839

F.2d 872, 876 (2d Cir. 1988).  Once such a reason has been cited, the

burden of production reverts to the plaintiff, who retains the ultimate

burden of establishing both pretext and that retaliation was a motivating

factor in the determination, by a preponderance of evidence.  *Holtz*, 258

F.3d at 77.  *See also*, *Brock*, 839 F.2d at 876.

In order to state a *prima facie* claim under section 1983 for

retaliatory conduct, a plaintiff must advance non-conclusory allegations

establishing that 1) the conduct at issue was protected; 2) the defendants

took adverse action against the plaintiff; and 3) there was a causal

connection between the protected activity and the adverse action – in

15

other words, that the protected conduct was a "substantial or motivating

factor" in the prison officials' decision to take action against the plaintiff.

*Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287,

97 S. Ct. 568, 576 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir.

2007); *Dawes*, 239 F.3d at 492 (2d Cir. 2001).  If the plaintiff carries this

burden, then to avoid liability the defendants must show by a

preponderance of the evidence that they would have taken action against

the plaintiff "even in the absence of the protected conduct."  *Mount*

*Healthy*, 429 U.S. at 287, 97 S. Ct. at 576.  If taken for both proper and

improper reasons, state action may be upheld if the action would have

been taken based on the proper reasons alone.  *Graham v. Henderson*,

89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).  In the prison context, an

"adverse action" is considered retaliatory when it "would deter a similarly

situated individual of ordinary firmness from exercising . . . constitutional

rights."  *Gill*, 389 F.3d at 381 (quotations and citations omitted).

Analysis of retaliation claims thus requires careful consideration of

the protected activity in which the inmate plaintiff has engaged, the

adverse action taken against him or her, and the evidence tending to link

the two.  When such claims, which are exceedingly case-specific, are

alleged in only conclusory fashion, and are not supported by evidence

establishing the requisite nexus between any protected activity and the adverse action complained of, a defendant is entitled to the entry of summary judgment dismissing plaintiff's retaliation claims. *Flaherty*, 713 F.2d at 13.

In his complaint, Gill asserts four separate allegations of retaliatory conduct, claiming that (1) defendant Letourneau discharged him from his prison job at the Auburn mess hall in retaliation for his filing of grievances, Complaint (Dkt. No. 1) at ¶¶ 46, 71; (2) defendants Pidlypchak and Calescibetta obtained one of his grievances and displayed it in the mess hall area in retaliation for Gill's filing of grievances, *id.* at ¶¶ 48, 77; (3) defendant Calescibetta filed a false misbehavior report against him and placed him in keeplock confinement for sixteen days, in retaliation for his filing of grievances regarding the underenforcement of Auburn's smoking policy, Complaint (Dkt. No. 1) at ¶¶ 15, 19-20, 23, 25-26, 51 and Exh. C; and (4) defendants Letourneau and Harrington placed him in keeplock confinement for fifteen days for refusing to withdraw a filed grievance, *id.* at ¶¶ 33, 35-38, 40, 63.  In their supplemental brief, defendants acknowledge the existence of triable fact issues surrounding the portion of plaintiff's retaliation cause of action related to the two periods of keeplock confinement, but argue that the remaining two retaliation claims,

17

addressing the termination of his employment in the prison mess hall and the posting of one of his grievances, are subject to dismissal as a matter of law and that no reasonable factfinder could find otherwise.

### 1. Removal Of The Plaintiff From His Prison Job

While plaintiff maintains that he was removed from his job in the prison mess hall as a direct consequence of his filing of grievances, defendants contend that Gill was excused and removed from his position for health reasons after sustaining asthma attacks, headaches, and sinus ailments while present in the mess hall or shortly after leaving, and that no reasonable factfinder could conclude otherwise. Defendants' Supplemental Memorandum (Dkt. No. 95) at p. 5. According to defendants, Gill's removal could not constitute adverse action because the discharge occurred to safeguard his health and to address his multiple grievances related to smoking in the mess hall. *Id.*

It is well-established, as defendants seemingly acknowledge, that the filing by plaintiff's filing of numerous grievances complaining of smoking in the mess hall is protected activity sufficient to satisfy the first element of a retaliation cause of action. *See Graham,* 89 F.3d at 80. The analysis of plaintiff's retaliation claim thus turns upon whether the

termination of his mess hall job assignment constituted a sufficiently adverse action, and whether he can establish the requisite link between his filing of grievances, as a protected activity, and that action.

The termination of a job assignment can under circumstances constitute adverse action, for purposes of the retaliation analysis. *Baker v. Zlochowon*, 741 F. Supp. 436, 439 (S.D.N.Y. 1990) ("a claim for relief can be stated under section 1983 for job for reassignments or terminations which were in retaliation for an inmate's efforts to seek vindication of his [or her] legal rights. . . "); *see also Gill v. Mooney*, 824 F.2d 1235, 1248-49 (2d Cir. 1987); *Jackson v. Cain,* 864 F.2d 1235, 1248-49 (5th Cir. 1989) "[A]ny 'otherwise routine administrative decision,' made in retaliation for the exercise of constitutional rights could give rise to a cause of action." *Baker*, 741 F. Supp.  at 439, (quoting *Gill v. Mooney*, 824 F.2d at 194).   In this instance a reasonable factfinder could conclude that the termination of plaintiff's mess hall position was sufficiently adverse to deter a similarly situated person of ordinary firmness from exercising rights guaranteed under the First Amendment.  *Davis v. Artuz*, 133 F.3d 906, 1998 WL 29763, *1 (2d Cir. 1998); *see also Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (citing, *Flaherty*, 1713 F.2d at 14).

The critical issue, then, is establishment of a nexus between the

two.  In this instance a *prima facie* case of retaliation has been stated; the close proximity in time between the filing of grievances and plaintiff's removal from his mess hall position alone could suffice to meet this relatively modest burden.  *Ayers v. Stewart*, 101 F.3d 687, 1997 WL 34609, at *1 (2d Cir. 1999); *see also Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir. 1995) (citing *Flaherty*, 713 F.2d at 14).

In response to plaintiff's retaliation claim, defendants maintain that Gill was removed from his position due to his health condition, and in response to his complaints regarding lack of enforcement of the smoking policy.  Defendants' Supplemental Memorandum (Dkt. No. 95) at p. 5. Plaintiff asserts that this proffered reason is pretextual, and that retaliation was the true motivating factor.

The record reveals a significant question of fact regarding the motivation for plaintiff's removal from his mess hall position.  While a reasonable factfinder could conclude that plaintiff was removed from his mess hall position due to his asthma, that result is not necessarily compelled.  In an affidavit given in support of plaintiff's original summary judgment motion by Dr. Anthony Graceffo, a clinical physician employed by the DOCS and assigned to Auburn, it is noted that while Gill complained of respiratory problems and asthma attacks on numerous

20

occasion to prison medical officials, he never mentioned alleged exposure to ETS at the Auburn mess hall, adding that "[i]f [Gill] had made it known to the medical staff that he was being exposed to second-hand smoke in the messhall [sic], and that second-hand smoke exacerbated his respiratory problems, the medical staff very likely would have investigated the conditions at the mess hall, inquired of the facility administration about the alleged underenforcement of DOCS' strict no-smoking policy, and if necessary, restricted Gill's employment so that he would not continue to be exposed to second–hand smoke."  Graceffo Aff. (Dkt. No. 47) ¶¶ 1, 10. Tellingly, there is no indication in the record that any such investigation was made.

Based upon the record now before the court, a reasonable factfinder could conclude that plaintiff's removal from his mess hall position was improperly motivated by the filing of his grievances.  Accordingly, I recommend against dismissal of this aspect of plaintiff's retaliation claim as a matter of law.  *Contrast Crenshaw v. Herbert*, 445 F. Supp. 2d 301, 303-04 (W.D.N.Y. 2006) (finding that inmate was not subject to retaliation when he was removed from certain prison jobs after filing a grievance where the record revealed that he was removed from his nurse's aide position due to his own fears for his safety, and his laundry job for poor

performance).

### 2.    The Posting Of Plaintiff's Grievance

Plaintiff further argues that defendants Calescibetta and

Pidlypchak retaliated against him by posting one of his grievances in the

Auburn mess hall.  Defendants contend that even assuming plaintiff's

allegations are true, at most the implication created by the posting of

plaintiff's grievance is that he has been labeled a "snitch" or an informant,

a matter which is not considered an adverse action under the relevant

case law.

A statement uttered by a prison official, in retaliation for protected

activity, reasonably calculated and intended to incite inmates, prisoners,

or fellow corrections workers to retaliate against an inmate can form the

basis for a cognizable retaliation claim under section 1983.  *Islam v.*

*Goord,* No. 05 Civ. 7502 (RJH) 2006 WL 2819651, at *5 (S.D.N.Y.

September 29, 2006) (citing *Williams v. Muller,* No. 99 Civ. 1680 (SAS)

2001 WL 936297, at *4 (S.D.N.Y. March 16, 2002).  Not every statement

made by a prison guard regarding an inmate's exercise of free speech,

however, constitutes adverse action under the applicable retaliation

analysis.  *Dawes*, 239 F.3d at 493.  Rather, "[a]bsent some factual

showing that the comments by the prison officials actually risked inciting

22

other inmates against [the plaintiff]" *id.,* a court should not assume that
other inmates would be incited to attack the plaintiff for complaining about
a prison guard's conduct.  *See Dawes,* 235 F.3d 489 (finding that a prison
guard telling other inmates that plaintiff was an informant does not
constitute adverse action); *see also Morales v. Mackalm*, 278 F.3d 126,
131-32 (2d Cir. 2002), *abrogated on other grounds*, *Porter v. Nussle*, 534
U.S. 516, 122 S. Ct. 983 (2002) (asserting that prison official's labeling
plaintiff a "stoolie" in the presence of other inmates was not adverse
action).

Analogous to those cases involving verbal harassment by prison
officials, which is not actionable in the absence of resulting physical harm
to a plaintiff, the mere posting of a grievance in the Auburn prison mess
hall, although perhaps supporting the implication that the plaintiff is a
complainer or a snitch, without more, likely would not deter a similarly
situated individual of ordinary firmness from filing grievances.  *See, e.g.,*
*Snyder v. McGinnis*, No. 03-CV-0902, 2004 WL 1949472, at *11
(W.D.N.Y. Sept. 2, 2004) (finding that inmate's retaliation claim against
prison official who publically referred to plaintiff as a "snitch" and a child
molester must fail because plaintiff failed to allege that he was
subsequently physically harmed by his fellow inmates); *Williams v. Muller*,

23

No. 98 CIV. 5204, 2001 WL 936297, at *4 (S.D.N.Y. Aug. 17, 2001)
(holding that prison official's alleged spreading of rumors intended to incite
inmates to harm plaintiff was insufficient to support a retaliation claim in
the absence of physical harm to plaintiff).

Although Gill claims, in markedly conclusory terms, that his "life,
safety and well-being" were in "grave danger" as a result of defendants'
posting his grievance regarding their lack of enforcement of the prison
smoking ban amidst a prison population comprised primarily of smokers,
*see* Complaint (Dkt. No. 1) ¶ 48, the record is devoid of any evidence that
defendants' actions actually prompted other inmates to harm him.  In that
regard, the record lacks evidence that he was assaulted by other inmates
or sustained any physical injuries because others believe him to be an
informant.  In fact, Gill testified at his deposition that after the grievance
was posted, no inmates or employees of DOCS inflicted any harm on him.
Goglia Decl. (Dkt. No. 46) (Gill Dep. Tr.) at pp. 121-22.  Although he
claims that he was "indirectly" threatened after the posting of the
grievance, Gill is unable to name any individuals who initiated these
threats, nor does he make any allegations beyond the claim that these
unidentified inmates called him "a rat and a snitch."  *Id.* at 122-23.

Based on the foregoing, I recommend a finding that the mere

24

posting by defendants Calescibetta and Pidlypchak of plaintiff's ETS grievance, without more, did not constitute adverse action, and that no reasonable factfinder could conclude otherwise.  I therefore recommend dismissal of this aspect of plaintiff's retaliation claim.

C.    Qualified Immunity

Defendant Letourneau, the only defendant implicated in this portion of plaintiff's retaliation claim, asserts that he is entitled to qualified immunity with respect to plaintiff's allegation that he was fired from his job in the prison mess hall for filing a grievance regarding the prison non-smoking policy.

Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982) (citations omitted). Accordingly, governmental officials sued for damages "are entitled to qualified immunity if 1) their actions did not violate clearly established law, or 2) it was objectively reasonable for them to believe that their actions did not violate such law."  *Warren v. Keane*, 196 F.3d 330, 332 (2d Cir. 1999) (citing *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996));  *see also Zellner v.*

25

*Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007);  *Iqbal v. Hasty*, 490 F.3d

143, 152 (2d Cir. 2007).  The law of qualified immunity seeks to strike a

balance between overexposure by government officials to suits for

violations based upon abstract rights and an unduly narrow view which

would insulate them from liability in connection with virtually all

discretionary decisions.  *Locurto v. Safir*, 264 F.3d 154, 162-63 (2d Cir.

2001);   *Warren*, 196 F.3d at 332.  As the Second Circuit has observed,

> [q]ualified immunity serves important interests in our
> political system, chief among them to ensure that
> damages suits do not unduly inhibit officials in the
> discharge of their duties by saddling individual officers
> with personal monetary liability and harassing litigation.

*Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (internal

quotations omitted) (citing, *inter alia*, *Bivens v. Six Unknown Named*

*Agents of the Fed. Bureau of Narcotics*, 456 F.2d 1339, 1348 (2d Cir.

1972)).

Until recently, it was generally agreed that a proper qualified

immunity analysis entailed a three step inquiry.  *Harhay v. Town of*

*Ellington Bd. of Educ.*, 323 F.3d 206, 211-12 (2d Cir. 2003).  As a

threshold matter a court considering the issue was charged with first

determining whether, based upon the facts alleged, the plaintiff had

facially established a constitutional violation.  *Id.*; *Gilles v. Repicky*, 511

26

F.3d 239, 243-44 (2d Cir. 2007).  If the answer to this inquiry was in the affirmative, then the focus turned to whether the right in issue was clearly established at the time of the alleged violation.  *Id.*  (citing *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 2156 (2001));  *see also Poe v. Leonard*, 282 F.3d 123, 132-33 (2d Cir. 2002).  Finally, upon determining that the plaintiff had a clearly established, constitutionally protected right which was violated, the court next considered whether it was nonetheless objectively reasonable for the defendant to believe that his or her action did not abridge that established right.  *Harhay*, 323 F.3d at 211; *Poe*, 282 F.3d at 133 (quoting *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998) (quoting, in turn, *Salim*, 93 F.3d at 89)).

The United States Supreme Court recently had the opportunity to reconsider the analysis prescribed in *Saucier*, holding that while the sequence of the inquiry set forth in that case is often appropriate, it should no longer be regarded as compulsory.  *Pearson v. Callahan*, 555 U.S. ___, 129 S. Ct. 808, 2009 WL 128768, at *9 (Jan. 21, 2009).  In *Pearson*, the Court reasoned that while the *Saucier* protocol promotes the development of constitutional precedent and is "especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable," the rigidity of the rule comes

27

with a price. *Id.* at *10, 129 S. Ct. At 818.  The Court noted, for example, that the inquiry often wastes both scarce judicial and party resources on challenging questions that have no bearing on the outcome of the case. *Id.*  Given that the intended purpose of the qualified immunity doctrine is to ensure that insubstantial claims are resolved prior to discovery, the Court opined that the rigid catechism prescribed by *Saucier* may serve to defeat this goal by requiring the parties "to endure additional burdens of suit – such as the cost of litigating constitutional questions and delays attributable to resolving them – when the suit otherwise could be disposed of more readily."  *Id*. (quotations and citations omitted).  As a result of its reflection on the matter, the *Pearson* Court concluded that because the judges of the district courts and courts of appeals "are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case", those decision makers "should be permitted to exercise their sound discretion in deciding which of the . . . prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."  *Id.* at *9, 129 S. Ct. at 818.

I have already found that a plausible claim of unlawful retaliation has been alleged based upon plaintiff's removal from his mess hall position.

The constitutional right at issue – the First Amendment right to be free from retaliation in return for having engaged in protected activity – was clearly established at the time of the alleged violation in April of 2006. *Rivera v. Senkowski*, 62 F.3d 80, 85 (2d Cir. 1995) (citing *Franco*, 854 F.2d at 589-90).  From the limited record now before the court, I discern no basis to conclude that defendant Letourneau would have been reasonable in his belief that terminating plaintiff from his job in the prison mess hall, in retaliation for Gill having engaged in protected activity in the form of filing grievances, did not violate plaintiff's First Amendment rights. Accordingly, I recommend a finding at this juncture that defendant Letourneau is not entitled to qualified immunity from suit, though with leave to raise the issue at trial.[6]  *See id.* at 85-86.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

Currently under consideration are retaliation claims by Gill against five of the defendants in this case.  Of the four remaining claims, defendants concede that two present triable issues of fact, making them ill-suited for resolution on motion for summary judgment.  Of the remaining two, I find the existence of triable issues of fact regarding the claim arising

---

[6]        In light of my determination on the merits I have not engaged in a separate qualified immunity analysis regarding the portion of plaintiff's retaliation claim growing out of the posting of his grievance.

out of plaintiff's removal from his mess hall position, precluding the entry of summary judgment on that claim, but conclude that no reasonable factfinder could determine that the posting of plaintiff's grievance in the mess hall was sufficiently adverse to deter a similarly situated person of ordinary firmness from engaging in protected activity under the First Amendment, and thus recommend summary dismissal of that claim as a matter of law.

Based upon the foregoing it is therefore hereby

RECOMMENDED, that defendants' motion for summary judgment (Dkt. No. 45), to the extent that it relates to the remaining retaliation claims, be GRANTED, in part, and that plaintiff's claim against defendants Pidlypchak and Calescibetta, related to the posting of grievances in the mess hall, be dismissed, but that the remaining three retaliation causes of action, against defendants Calescibetta, Letourneau, French, and Harrington, be referred for trial based upon the existence of genuinely disputed issues of material fact which must be resolved before those claims can be adjudicated.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days of service of this report.

FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d),

72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

Report and Recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:  March 11, 2009
        Syracuse, NY

31